UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS ARCIUOLO,<br>WILLIAM J. HARRIS,<br>GEORGE MANCINI,<br>HOWARD TOMLIN,<br>    Plaintiffs,<br><br>        v.<br>TOMTEC INC.,<br>THOMAS ASTLE,<br>    Defendants. | No. 3:14-cv-00624 (JAM) |

**ORDER DISMISSING CASE FOR LACK OF FEDERAL JURISDICTION
AND FOR FAILURE TO STATE FEDERAL CLAIM**

Plaintiffs were fired from their jobs and have filed suit against their former company employer and the company's owner. Although plaintiffs may have well-founded claims for relief under state law, I conclude that plaintiffs' federal law claims are so insubstantial that they must be dismissed for lack of federal jurisdiction. In the alternative, I conclude that neither of plaintiffs' federal law claims are sufficiently pleaded to afford plausible grounds for relief under Fed. R. Civ. P. 12(b)(6). In addition, I conclude that plaintiffs' failure to file a timely opposition to defendants' motion to dismiss warrants a grant of dismissal of plaintiffs' federal claims.

**BACKGROUND**

In this consolidated action, four plaintiffs—Thomas Arciuolo, William Harris, Howard Tomlin, and George Mancini—have filed suit against their former employer, Tomtec, Inc. (Tomtec), and the company's owner, Thomas Astle. Their complaints each allege the same facts with minor differences among them. Plaintiffs allegedly worked for many years at Tomtec as salaried (non-hourly) employees. Each plaintiff was first hired to begin work at Tomtec when he

was at least 40 years old or older.[1] The complaints say nothing about plaintiffs' race, gender, ethnic background, national origin, or religion.

According to plaintiffs, defendant Astle was an unpleasant and generally abusive boss. Matters came to a head in the fall of 2012 when the Tomtec facility closed during Super Storm Sandy. Astle did not want to pay employees—such as his salaried employees—for the time that the Tomtec facility was closed by the storm and that the company's employees did not work. A few days later, Astle issued an ultimatum to plaintiffs and the other salaried employees that he was going to change their status from salaried employees to hourly employees; this was allegedly in breach of plaintiffs' employment contracts with Tomtec. Plaintiffs protested and threatened to report defendants to the Department of Labor. Astle allegedly retorted that plaintiffs were "free, I can't say that anymore and 21." According to plaintiffs, Astle commonly bullied plaintiffs and other unnamed employees by saying: "You are Free, White, and 21."

After plaintiffs refused to become hourly employees, defendants terminated their employment on November 29, 2012. According to plaintiffs, defendants then wrongfully and untruthfully opposed plaintiffs' efforts to collect unemployment benefits.

Plaintiffs allege two federal law claims for relief under Title VII of the Civil Rights Act of 1964 and under the Age Discrimination in Employment Act (ADEA). They otherwise allege multiple state law claims arising under the Connecticut Fair Employment Practices Act and for breach of contract, promissory estoppel, and intentional infliction of emotional distress.

## DISCUSSION

Federal courts are courts of limited jurisdiction. *See generally Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013); *Kempe's Lessee v. Kennedy*, 9 U.S. (5 Cranch) 173, 185 (1809). Unless a

---

[1] Plaintiff Arciuolo was 43 when he was hired in 2008; plaintiff Harris was 44 when he was hired in 1990; plaintiff Tomlin was 40 when he was hired in 1989; and plaintiff Mancini was 48 when he was hired in 1994.

federal court has diversity jurisdiction (*e.g.*, a dispute involving at least $75,000 between parties from different states), a federal court plaintiff must ordinarily set forth a question of federal law in order to have his claim resolved in a federal court. *See Gunn*, 133 S. Ct. at 1064–65.

Here, plaintiffs allege federal question jurisdiction in light of their claims under Title VII and the ADEA. But even if a complaint duly cites a federal law, a federal court still lacks jurisdiction if the federal law claim is made "solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous." *Bell v. Hood*, 327 U.S. 678, 683 (1946); *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010). "The first exception to the rule of *Bell v. Hood* is designed to capture those cases in which a plaintiff with state law claims merely trumps up federal jurisdiction for strategic reasons." *Eubanks v. McCotter*, 802 F.2d 790, 793 (5th Cir. 1986). Thus, as Judge Easterbrook has noted, a federal law theory of relief "can be so feeble that it falls outside federal jurisdiction even though all formal aspects of a federal claim appear to have been satisfied." *Bovee v. Broom*, 732 F.3d 743, 744 (7th Cir. 2013). And, of course, a federal court must of its own initiative dismiss a case for lack of jurisdiction at any time when it becomes apparent that the Court lacks such jurisdiction. *See*, *e.g.,* Fed. R. Civ. P. 12(h)(3).

Plaintiffs' Title VII claim—the first and primary count alleged in their complaints—is obviously frivolous. Plaintiffs do not allege that they are members of any class protected under Title VII, much less do plaintiffs allege that they were discriminated against on the basis of their membership in any class that is protected under Title VII. The plain language of Title VII makes clear that it protects only against employment discrimination "because of ... race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). As Judge Haight has observed, "[a] dissatisfied, even an unfairly treated, group of employees does not constitute a protected class

under Title VII, unless the unfairness is ascribable to one of the specifically enumerated causes of discrimination" under Title VII. *Volpe v. Connecticut Dept. of Mental Health & Addiction Services*, 88 F. Supp. 3d 67, 73 (D. Conn. 2015).

No facts alleged in the complaint could conceivably support a Title VII claim. The fact that Astle told plaintiffs that they were "free" and "white" does not remotely or rationally suggest animus on the basis of plaintiffs' race (which race—in any event—has not even been alleged in their complaints). Plaintiffs' Title VII claim is so obviously frivolous that I cannot help but conclude—in light of the fact that it has been filed by experienced counsel— that it has been asserted solely for reasons to invoke federal jurisdiction in this case.

Plaintiffs' claim for relief under the ADEA is nearly as vacuous as the Title VII claim. True enough, plaintiffs allege that were within an age-protected class under the ADEA, but they allege no other facts—as distinct from conclusory allegations—to suggest that the reason for their termination had anything to do with their age. The fact that Astle told plaintiffs that they were "21" does not support a rational conclusion that Astle sought to discriminate on the basis of plaintiffs' age (which of course was far more than 21).

Plaintiffs otherwise allege that defendants "targeted older workers" in that "[t]he majority of, if not all of the salaried employees at the defendant [company] are older than forty (40) years of age, and many are significantly older." But this amorphous allegation (that somewhere between a simple "majority" to "all" of the salaried employees are more than 40 years old) means nothing in the absence of an allegation or information about the age of *non*-salaried employee comparators. If a "majority" of hourly, non-salaried employees at Tomtec are 40 or over, then there is no rational inference of discrimination to be drawn from actions that disfavor salaried employees. *Cf. Burgis v. New York City Dept. of Sanitation*, 798 F.3d 63, 69 (2d Cir.

2015) (statistical disparity may be used to prove discriminatory intent but "the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible non-discriminatory explanations very unlikely").

Moreover, as the Supreme Court has concluded, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (affirming dismissal of ADEA disparate-impact claim for failing "to identify the relevant practice" and where it is also "clear from the record that the City's plan was based on reasonable factors other than age."); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008) (noting that "[i]dentifying a specific practice is not a trivial burden" to support an ADEA disparate-impact claim). In addition, the allegations of the complaints themselves acknowledge the cost-saving reasons why defendants wished to convert salaried employees to hourly-employee status and specifically Astle's concern that he was paying employees for time that they were not working and when the facility was not in operation. These allegations of themselves contradict any conclusion that defendants did not have reasons other than age for terminating plaintiffs' employment. *See, e.g., Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 397 (S.D.N.Y. 2011) (dismissing ADEA disparate-impact claim where "plaintiff, on the face of his Complaint, pleads facts showing that [defendant's] action is supported by an RFOA [reasonable factor other than age]"). And any inference of age discrimination is diminished even more by the fact that each of the plaintiffs was hired by defendants when they were already over the age of 40.

All of the remaining allegations of the complaint that relate to plaintiffs' claims of age discrimination are wholly conclusory and bereft of any connection to allegations of specific statements or acts by any defendant (*e.g.,* that plaintiffs "learned that Astle was using this event

[Super Storm Sandy] as an excuse to get rid of older employees" or that defendants "took action against the plaintiff[s] on the basis of [their] age"). Such bare allegations do not suffice to support an age-discrimination claim. *See*, *e.g.*, *Bohnet v. Valley Stream Union Free School Dist. 13*, 30 F. Supp. 3d 174, 180-82 (E.D.N.Y. 2014) (dismissing ADEA claim; noting that "[w]hat is required at the motion to dismiss stage is that the complaint contain sufficient facts to make plausible the conclusion that 'but for' her age plaintiff would have been hired" and that plaintiff "alleges only that she applied for many positions in the District while she was over the age of forty and that the District did not hire her for those positions but hired younger individuals under the age of 40"); *Caesar v. Hartford Hosp.*, 46 F. Supp. 2d 174, 178 (D. Conn. 1999) (dismissing ADEA claim asserting only conclusory allegations that plaintiff was subjected to discriminatory treatment on account of her age). Ultimately, plaintiffs' age-discrimination claim relies on one actual fact only—that the plaintiffs were older than 40 when they lost their jobs, and this fact alone plainly does not suffice for an age-discrimination claim.

In short, plaintiffs' Title VII and ADEA claims plainly lack any appropriate factual allegations to support them. I conclude that their inclusion in the complaint was solely to obtain federal jurisdiction and to "federalize" what is really a state law contract and employment dispute about unpleasant working conditions and about defendants' efforts to save costs by changing their payroll structure. I draw no conclusion about the validity of plaintiffs' claims as a matter of state law. My conclusion is only that these state law claims do not belong in federal court in the absence of legitimate federal law claims.

In any event, even if I were to conclude that I have jurisdiction over plaintiffs' Title VII and ADEA claims, I would conclude that they should be dismissed, because they fall well short for all the reasons explained above of alleging plausible grounds for relief. A federal court

complaint may not survive absent allegations that would plausibly entitle a plaintiff to relief. *See*, *e.g., Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009) (citations and internal quotation marks omitted). As the Supreme Court has explained, "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ibid.*

Here, there can be no plausible Title VII claim in the absence of any allegation of discrimination that was based on a class characteristic that is subject to protection under Title VII. Nor does any claim of age discrimination cross the line from "possibility" to "plausibility" in the absence of any age-discriminatory comments or any common sense reason to suppose that defendants' effort to avoid paying employees for time that they were *not* actually working was a subterfuge for age-based discrimination. Therefore, these federal law claims under Title VII and the ADEA are subject to dismissal under Rule 12(b)(6).

Moreover, defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on similar and additional grounds, and plaintiffs did not file a timely opposition to the motion to dismiss. Defendants filed their motion to dismiss on July 7, 2015, and plaintiffs' opposition was due within 21 days on July 28, 2015. That deadline came and went, and plaintiffs did not file an objection response until October 4, 2015—more than two months after any objection was due. Plaintiffs filed their objections without seeking an extension of time *nunc pro tunc* or attempting to set forth good cause as required for their failure to file a timely response to defendants' motion. *See* D. Conn. L. Civ. R. 7(c).

The Court's local rules provide that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." D. Conn. L. Civ. R. 7(a).  Plaintiffs' failure to file a timely opposition to defendants' motion to dismiss independently warrants granting dismissal of the federal law claims. As I have elsewhere described in a prior ruling in this docket, plaintiffs have previously disregarded scheduling and discovery requirements in this case (and equally so for plaintiffs' counsel in many other cases). These failures to comply with basic federal court rules reinforce my conclusion that plaintiffs' claims do not belong in federal court.

## CONCLUSION

This action is DISMISSED for lack of federal jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). In the alternative, defendants' motions to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED on the ground that the federal law claims do not set forth plausible grounds for relief and that plaintiffs did not timely object to the motions to dismiss. Because federal jurisdiction is lacking, I may not consider any of plaintiffs' state law claims, and nor would I if I had supplemental jurisdiction. *See*, *e.g., Cave v. E. Meadow Union Free Sch. Dist*., 514 F.3d 240, 250 (2d Cir. 2008). Defendants' motion to strike objection (Doc. #66) is DENIED as moot.

If grounds exist for amending the complaints to allege a valid Title VII or ADEA claim, then plaintiffs may file motions to amend their complaints by Friday, October 30, 2015. In addition to including a proposed amended complaint, any such motion to file an amended complaint shall explain in detail (1) the nature of any proposed amendment, (2) why any proposed amendment suffices to redress the concerns set forth in this ruling, and (3) what

evidentiary basis exists or is expected to exist to support the proposed amendment. If no such motions are filed by October 30, 2015, then the Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 22nd day of October 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge